STRAUB, *Circuit Judge*, dissenting:

I respectfully dissent. The majority reads the BIA's opinion as making an adverse credibility finding based on two inconsistencies in Zhang's testimony that were mentioned by the IJ. According to the majority, those two inconsistent statements provide substantial evidence supporting an adverse credibility finding by the BIA.

The majority's approach is flawed for the simple reason that the BIA did not find Zhang's account incredible based on the two inconsistencies cited by the IJ. The IJ's decision said that Zhang gave inconsistent testimony on two matters: the date Zhang's wife was forcibly sterilized and the date he learned about the sterilization after he arrived in the United States. The BIA, in reviewing the IJ's decision, said that the IJ "cited several important discrepancies surrounding the facts that form the basis of the applicant's claim." BIA Decision at 1. However, the BIA added that "some of [the inconsistencies cited by the IJ] may have an explanation" and that the cited inconsistencies were "not conclusive in themselves" to provide a basis for denying Zhang's asylum claim. *Id.* The majority is correct that the BIA said that the inconsistencies cited by the IJ were "indicative of an overall lack of veracity on the part of [Zhang]." *Id.* But in the very same sentence, the BIA said that the inconsistencies were "not conclusive in themselves," *id.* – presumably because the BIA thought there might be an explanation for the inconsistencies or because the BIA thought the inconsistencies were too minor to alone provide a basis for an adverse credibility finding. Although much about the BIA's opinion is unclear, what is clear is that if the BIA did indeed find Zhang's account of persecution incredible, it did not rely exclusively on the inconsistencies cited by the IJ. In light of the BIA's rejection of the view that

1

the inconsistencies cited by the IJ could alone support an adverse credibility finding, I cannot agree with the majority's decision, which concludes that those two inconsistent statements provide substantial evidence supporting the BIA's decision. The majority errs by affirming the BIA's decision based on reasons other than those provided by the BIA. *See, e.g.*, *Zhang v. U.S. Dep't of Justice*, 362 F.3d 155, 159 (2d Cir. 2004) ("'[A]n agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.'") (quoting *Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 387 (1947)).

Unlike the majority, I do not read the BIA's decision as entirely rejecting Zhang's testimony. But even accepting the majority's view that the BIA made an explicit adverse credibility finding, the case must be remanded. If the BIA made an adverse credibility finding, it must have relied on some reason or reasons in addition to the inconsistencies cited by the IJ. Unfortunately, other than to say that the inconsistencies cited by the IJ were inconclusive as to Zhang's credibility, the BIA does not explain its reasoning regarding Zhang's credibility. We require the BIA to provide "'specific, cogent' reasons" for an adverse credibility finding that "bear a legitimate nexus to the finding." *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003). Without knowing the basis for the BIA's adverse credibility finding – assuming it made one – we cannot uphold it.

I read the BIA's decision as expressing doubt about the veracity of Zhang's testimony, but not rejecting the testimony entirely. Rather, the BIA looked at whether Zhang's testimony – which it described as of "limited credibility and lacking and detail" – combined with the "few documents" Zhang offered to corroborate his claim, were sufficient to meet his overall burden of

2

proof. BIA Decision at 2. Our decision in *Qiu v. Ashcroft*, 329 F.3d 140 (2d Cir. 2003), which was decided after the BIA denied Zhang's claim, clarifies the standards for requiring testimonial detail from an asylum applicant. Under the standard set forth in *Qiu*, Zhang's account was sufficiently detailed. Therefore, "lack of detail" should not have played a role in the BIA's burden-of-proof analysis. Because the BIA's application of an improper standard for testimonial specificity may have influenced its decision to deny Zhang's claim, remand for reconsideration in light of *Qiu* is warranted.

In addition, although Zhang submitted documents corroborating his claim, including a certificate stating that his wife had been sterilized, the BIA's only mention of Zhang's documentary evidence is its statement that the combination of Zhang's testimony and his "few documents" was insufficient to meet the overall burden of proof. BIA Decision at 2. We simply cannot discern from the BIA's decision whether it applied the proper legal standards regarding corroborating evidence and remand is required for that reason as well.

In sum, for the reasons explained below, I believe remand is required whether the BIA's decision is read either as (1) making an adverse credibility finding (the majority's view), or (2) holding that Zhang failed to meet his burden of proof based on a combination of the lack of detail in Zhang's testimony, insufficient documentary evidence, and doubts about his credibility. Moreover, the fact that the BIA has so inadequately explained its decision such that there is doubt as to its reasoning is itself a reason to remand for explanation.

## I.    The BIA's Decision

In a case such as this, where the BIA has issued an opinion which does not fully adopt the

3

IJ's decision, we review the BIA's decision, not the IJ's decision, to see if it is supported by substantial evidence and free from legal error.  *See Qiu v. Ashcroft*, 329 F.3d 140 (2d Cir. 2003) (reviewing BIA's decision)*; Diallo v. INS*, 232 F.3d 279 (2d Cir. 2000) (same); *see also Hernandez v. Ashcroft*, 345 F.3d 824, 832 (9th Cir. 2003) ("Where as here, the BIA has conducted a *de novo* review of the IJ's decision, we review only the decision of the BIA."); *Gima v. INS*, 283 F.3d 664, 666 (5th Cir. 2002) ("Here, the BIA did not adopt the decision of the IJ, but conducted a complete review of the record.  Thus, our review is limited to the BIA's decision.").  Although streamlining regulations were in effect at the time the BIA reviewed Zhang's claim which would have allowed the BIA to summarily affirm the IJ's decision, *see* 8 C.F.R. § 3.1(a)(7)(ii) (2002) (recodified at 8 C.F.R. § 1003.1(a)(7)(ii) (2004))*,* the BIA did not summarily affirm.[1]  Nor did the BIA state that it was adopting the reasoning of the IJ in full.  Therefore, we review the BIA's decision.

The BIA's opinion discusses Zhang's claim as follows:

> The Immigration Judge cites several important discrepancies surrounding the facts that form the basis of the applicant's claim.  While some of these may have an explanation, we find that these problems, while not conclusive in themselves, are indicative of an overall lack of veracity on the part of the applicant.  An asylum applicant bears the evidentiary burden of proof and persuasion, and where there are significant, meaningful evidentiary gaps, applications will ordinarily have to be denied for failure of proof.  *Matter of Dass* [20 I&N Dec. 120 (BIA 1989)].  While the Immigration Judge emphasizes the lack of supporting documents provided by the applicant, we note that an alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his alleged fear.  *See Diallo v. INS*, 232 F.3d 279 (2d Cir. 2000); *Matter of Dass*, *supra*; *Matter of Mogharrabi*, [19 I&N Dec. 439 (BIA

---

[1] When the BIA summarily affirms under the streamlining regulations, we review the IJ's decision directly.  *See Zhang*, 362 F.3d at 158.

1987)]; *see e.g., Carvajal-Munoz v. INS*, 743 F.2d 562, 574 (7th Cir. 1984). Here, we agree with the Immigration Judge that the applicant has not presented consistent, detailed or credible testimony. We simply cannot find the testimony, of limited credibility and lacking in detail, combined with the few documents, provide sufficient evidence to meet the overall burden of proof. *See Matter of S-M-J*, 21 I&N Dec. 722 (BIA 1997); *Matter of Dass, supra*; *Matter of Mogharrabi, supra*.

BIA Decision at 1-2.

As the majority recounts, the IJ stated that Zhang gave inconsistent testimony about two matters – the date Zhang's wife was forcibly sterilized and the date Zhang learned of the sterilization after arriving in the United States. *See Ante* at **[18-23].** The BIA presumably was referring to those two inconsistencies when it stated that "[t]he Immigration Judge cite[d] several important discrepancies surrounding the facts that form the basis of the applicant's claim." BIA Decision at 1. The BIA acknowledged, however, that some of the inconsistencies cited by the IJ "may have an explanation," and concluded that although the inconsistencies were "indicative of an overall lack of veracity on the party of the applicant," they were "not conclusive in themselves." *Id.* Therefore, the BIA was not willing to make an adverse credibility finding based solely on the inconsistencies cited by the IJ.

The majority appears to argue that the BIA's statement that the inconsistencies were "not conclusive in themselves" was meant to convey that the discrepancies were not themselves about the central issue of whether Zhang suffered persecution – i.e., whether or not Zhang's wife was in fact sterilized. *See ante* at **[19 n.10].** There were discrepancies about certain dates, but not about the fact of the sterilization. In the majority's view, the BIA concluded that although Zhang consistently testified that his wife was sterilized, the discrepancies about the dates *were*

5

conclusive in themselves as to Zhang's credibility. In other words, based on the discrepancies about dates, the BIA could determine conclusively that Zhang was lying about the sterilization.

The majority's reading is, at best, quite strained. The BIA said: "While some of the [discrepancies] may have an explanation, we find that these problems, while not conclusive in themselves, are indicative of an overall lack of veracity on the part of the applicant." BIA Decision at 1. The most straightforward reading of this sentence is that the BIA concluded that although the inconsistencies about the dates were "indicative" of a lack of veracity on the part of Zhang, they were not alone enough to make it sure that Zhang was lying about the persecution. The inconsistencies were not conclusive as to whether Zhang's account of the sterilization was incredible.

The majority asserts that the BIA's sentence is structured "not to qualify the credibility finding" but to "clarify that the adverse credibility finding is made despite the observations." *Ante* at **[19 n.10]**. "Despite" is a word injected by the majority. Nothing about the sentence suggests that the BIA was seeking to strengthen its credibility assessment. Rather, the words "indicative" and "not conclusive" are hedging terms.

It makes sense that the BIA was unwilling to find Zhang's account incredible based only on the inconsistent statements mentioned by the IJ.[2] Although Zhang's hearing testimony was admittedly confusing, the discrepancies cited by the IJ may have resulted from language

---

[2] Indeed, the IJ never explicitly stated that the two inconsistencies were enough alone to deny Zhang's claim. Rather, the IJ said that the inconsistencies "seriously undermin[ed] the applicant's truthfulness and credibility before the Court with regard to the forced sterilization of his spouse," then turned to a discussion of Zhang's failure to offer sufficient corroborating documentation, and ultimately concluded that Zhang failed to establish eligibility for asylum.

6

difficulties and unclear questioning, rather than any attempt on Zhang's part to advance false claims of persecution. I agree with the majority that it is not our role to "see if Zhang's inconsistent statements can somehow be reconciled." *Ante* at [**24**]. However, in this case, the BIA specifically found that some of the inconsistencies cited by the IJ "may have an explanation" and were "not conclusive in themselves" as to Zhang's credibility. BIA Decision at 1.

After stating that the inconsistencies cited by the IJ were "not conclusive in themselves," the BIA said: "[w]e agree with the Immigration Judge that the applicant has not presented consistent, detailed, or credible testimony." *Id.* at 2. This statement in isolation appears to be an adverse credibility finding. Yet this sentence is in tension with the BIA's previous statement that the inconsistencies cited by the IJ were "not conclusive in themselves," *id.* at 1, and the BIA's next sentence which described Zhang's testimony as of "limited credibility," *id.* at 2 – rather than "not credible." If the BIA was of the view that Zhang's account was incredible, it could have stopped its analysis with an adverse credibility finding rather than considering whether Zhang's testimony combined with his documentary evidence met the overall burden of proof. In addition, I am reluctant to place great weight on the BIA's statement that it agreed with the IJ that Zhang did not present "consistent, detailed, or credible testimony," as the IJ did not in fact criticize Zhang's testimony as lacking in detail.

Therefore, it appears to me that the BIA expressed doubt about Zhang's credibility, but did not make an adverse credibility finding. Rather than finding Zhang incredible based on the inconsistencies in his testimony that were cited by the IJ and denying Zhang's claim on that basis, the BIA considered whether Zhang's testimony – which it described as "lacking in detail"

7

and "of limited credibility" – combined with the documents Zhang submitted, met the overall burden of proof.

## II. Insufficient Reasons for Adverse Credibility Finding

Even accepting the majority's view that the BIA made an adverse credibility finding rather than simply expressing doubt about Zhang's credibility, remand is required because the BIA did not explain the basis for the adverse credibility finding.

As the majority recognizes, we require the BIA to provide "specific, cogent" reasons for an adverse credibility finding that bear a "legitimate nexus" to the finding. *Secaida-Rosales v. INS*, 331 F.3d 297, 305 (2d Cir. 2003). Moreover, inconsistencies that are "relatively minor and isolated" need not "be fatal to credibility." *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000).

Although the majority recognizes that the BIA is required to explain the basis for an adverse credibility finding, the majority ignores the fact that the BIA stated that the inconsistencies cited by the IJ were "not conclusive" and that some "may have an explanation." Instead, the majority takes the view that the BIA considered the two inconsistencies cited by the IJ conclusive as to Zhang's credibility. Relying on that view, the majority reasons that the two inconsistencies "were not the sort of 'minor or isolated' discrepancies so plainly immaterial to a persecution claim that no reasonable fact-finder could use them as a basis for an adverse credibility ruling," *ante* at **[23]**, and says that the inconsistencies qualify as "specific, cogent" reasons bearing a "legitimate nexus" to the adverse credibility finding that our cases require, *ante* at **[24].** The majority concludes that the "the adverse credibility findings of the IJ, thereafter concurred in by the BIA, were supported by substantial evidence of inconsistent statements by

8

Zhang on matters material to his asylum claim" and these adverse credibility findings "constitute substantial evidence to support the conclusion that Zhang failed to carry his burden of proof." *Ante* at **[27].**

I cannot agree with the majority's approach because it is clear from the BIA's decision that if the BIA did indeed make an adverse credibility finding, it must have relied on some reason *in addition* to the two inconsistencies cited by the IJ. Although the BIA concluded that those inconsistencies were "indicative" of a lack of veracity on the part of Zhang, the inconsistencies were not conclusive of the matter. The BIA's decision fails to provide any other reason for doubting Zhang's account. Although the BIA mentions the lack of detail in Zhang's testimony and the "few documents" that he presented, which are matters that could potentially bear on credibility, the BIA mentions those factors only in reference to whether Zhang met the overall burden of proof, and not in reference to an assessment of Zhang's credibility.

Therefore, assuming the BIA did make an adverse credibility finding – as the majority asserts that it did – the BIA failed to provide the specific reasons for the decision that we require. *See Secaida-Rosales*, 331 F.3d at 307. Without knowing the reasons for the adverse credibility finding, we cannot determine whether the reasons are supported by evidence in the record and whether the reasons bear a "legitimate nexus" to the adverse credibility finding. *See id.* For example, suppose the BIA found Zhang incredible based on the two inconsistencies cited by the IJ and some third reason, which upon our examination we discovered had no basis in the record. In such a case, we would have to remand, because the BIA expressed its view that the two inconsistencies cited by the IJ would not alone support an adverse credibility finding. In the

present case, assuming the BIA did find Zhang incredible, we do not know what reasons it relied upon in addition to the two inconsistencies cited by the IJ. Therefore, we are unable to conduct an adequate review of the decision.

The fact that a hypothetical reasonable adjudicator *could* have made an adverse credibility finding based on the two inconsistencies cited by the IJ does not suffice. Rather, to uphold the BIA's adverse credibility finding based on the inconsistencies cited by the IJ, it must be the case that the BIA actually made an adverse credibility finding based on those inconsistencies. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1946) ("[A] reviewing court . . . must judge the propriety of [an agency's] action solely by the grounds invoked by the agency."); *Comollari v. Ashcroft*, 378 F.3d 694, 696 (7th Cir. 2004) ("As we tirelessly remind the lawyers from the Justice Department's Office of Immigration Litigation, the *Chenery* rule bars a reviewing court from upholding an agency's decision on a ground different from the agency's.") (citations omitted). Our deference to the BIA does not include an obligation to seek out alternative grounds to affirm based on what the BIA *could* have, but did not, find. *See Qiu*, 329 F.3d at 149. I do not agree with the majority that we can affirm an adverse credibility finding by the BIA based on the inconsistencies cited by the IJ, as the BIA was of the view that those inconsistencies were insufficient to support such a finding. Because the BIA does not give us the reasons for its adverse credibility finding – assuming it made one – we must remand to the BIA for further explanation of its reasoning.

## III.     Improper Demand for Additional Testimonial Detail

For the reasons discussed above, it appears that the BIA did not deny Zhang's persecution

claim based on a finding that his account was incredible, but rather denied his claim based on a conclusion that Zhang's testimony, combined with the documents he submitted, was insufficient to meet the overall burden of proof.

The BIA mentions the lack of detail in Zhang's testimony as a reason for concluding that he failed to meet his overall burden of proof. In *Qiu v. Ashcroft*, 329 F.3d 140 (2d Cir. 2003), we held that the BIA erred in denying an asylum claim based on the view that the testimony was insufficiently detailed. We acknowledged in *Qiu* that "the petitioner whose testimony is vague can only qualify for asylum if he produces evidence that adds a certain amount of detail to his story." *Id.* at 150. However, we explained that the level of detail required by the BIA cannot be a subjective determination. *Id.* at 151-52. Rather, we said that "testimony is 'too vague' if it doesn't identify facts corresponding to each of the elements of one of the 'refugee' categories of the immigration statutes, as interpreted by the BIA and the federal courts." *Id.* at 151. Therefore, a petitioner need not testify in great detail to establish refugee status, so long as he or she testifies to concrete facts corresponding to each of the statutory elements for asylum eligibility. *See id.*

The BIA mentioned the "lack of detail" in Zhang's testimony as a reason for finding he failed to meet his burden of proof, but failed to explain why more detail was required. Zhang clearly testified that 1) his wife was taken by five or six people, including officials from the village government, from her house; 2) she was brought to the hospital and sterilized; and 3) she did not agree to the operation. Under *Qiu*, Zhang's testimony was sufficiently specific because the facts, if true, establish eligibility for asylum. *See* 8 U.S.C. § 1101(a)(42) ("[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization . . . shall be deemed

11

to have been persecuted on account of political opinion . . . ."); *Qiu*, 329 F.3d at 151 ("[Qiu's testimony] is not detailed testimony, but neither is it 'vague.' It is specific as to the following essential facts: (a) that his wife was forced to be sterilized against her will, and (b) that the agents of coercion were government birth control officials, from which it follows, absent contrary evidence, that they were acting to advance China's population control policy. This is enough specificity to bring Qiu's wife within the ambit of the IIRIRA's regulatory presumption of persecution on account of political opinion, and, under *In re C-Y-Z-*, it suffices for Qiu as well.").

Of course, lack of detail in an applicant's testimony can potentially bear on a credibility assessment. We explained in *Qiu* that "[w]here an applicant gives very spare testimony . . . the IJ or the INS may fairly wonder whether the testimony is fabricated," *id.* at 152, and we suggested that in such cases "the IJ and counsel for the INS may wish to probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility," *id.*

However, the IJ did not remark on lack of detail as a reason for doubting Zhang's credibility, and if the BIA considered lack of detail relevant to Zhang's credibility, it did not explain as much. Instead, the BIA apparently considered the "lack of detail" in Zhang's testimony relevant in determining whether Zhang met his burden of proof. However, under the standard set forth in *Qiu*, Zhang's claim should not have been denied on the basis of insufficient testimonial specificity. *Qiu* was decided after the BIA's decision on Zhang's claim, and we should remand to the BIA for reconsideration of whether Zhang has met his burden of proof in light of *Qiu*. It may be that the BIA would find that Zhang has failed to meet his burden of proof even without "lack of detailed testimony" playing a role in its calculus. But this is a

12

determination the agency must make in the first instance.

## IV. Inadequate Explanation of Treatment of Corroborating Documents

The BIA also erred in its consideration of Zhang's corroborating documentation. Corroborating evidence is relevant both in assessing credibility, and in determining whether an applicant has met the overall burden of proof. In *Diallo v. INS*, 232 F.3d 279 (2d Cir. 2000), we explained the process the BIA should follow in considering asylum claims:

> First, the agency must determine whether the applicant's testimony is credible. In making this determination, the presence of corroborating evidence may be relevant. Second, the agency must determine whether the applicant has met his or her burden of proof. Here, too, corroborating evidence (or an explanation for its absence) may be required if it would reasonably be expected, even where the applicant's testimony is credible. . . . [I]f the BIA finds that [the applicant's] testimony was credible, it should decide whether additional corroboration is nonetheless required to meet his burden of proof. If the BIA insists on further corroboration, it should explain specifically, either in its decision or otherwise in the record: (1) why it is reasonable under the BIA's standards to expect such corroboration; and (2) why [the applicant's] proffered explanations for the lack of such corroboration are insufficient.

*Diallo*, 232 F.3d at 290.

Zhang produced significant corroboration for his testimony, including: (1) his birth certificate, (2) his marriage certificate, (3) a copy of his family's household register, (4) a picture of his wife and two children, (5) a certificate of sterilization indicating that Zhang's wife had a sterilization operation on June 5, 1993, and (6) a cash receipt dated May 12, 1993 confirming that Zhang's wife paid a 3,000 RMB "family planning penalty" for "one exceeded birth."

The BIA, under *Diallo*, should have first made an explicit credibility determination that included an examination of the effect of Zhang's corroborating documents on his credibility. We

13

explained in *Diallo*:

> In making their [credibility] determinations, the IJ and the BIA should consider the underlying consistency and plausibility of [the applicant's] story, the extent to which it was corroborated, and the believability of the explanations [the applicant] offered for failing to provide further corroboration. We remind the IJ and the BIA that [the applicant's] simple failure to produce any particular documentary support cannot serve as the sole basis of an adverse credibility finding. While corroboration may bolster credibility, an applicant may still be credible absent specific corroboration, especially where his or her explanations for the absence of corroboration are themselves credible.

*Diallo*, 232 F.3d at 290. Although Zhang offered strong corroborating evidence, including the sterilization certificate and the receipt showing payment of a "family planning penalty," there is no indication in the BIA's decision that it considered whether Zhang's documentation bolstered his credibility. If the BIA doubted the authenticity of Zhang's documents, it did not say as much. Indeed, the BIA's only mention of the documents submitted by Zhang was its statement: "We simply cannot find the testimony, of limited credibility and lacking in detail, *combined with the few documents,* provide sufficient evidence to meet the overall burden of proof." BIA Decision 2 (emphasis added).

We do not know from the BIA's statement whether it thought that Zhang's documents were forged, or whether the BIA accepted the authenticity of the documents but thought that further documentary evidence was still needed for Zhang to meet the burden of proof. For example, the BIA might have thought that the sterilization certificate was authentic, but that Zhang provided insufficient corroborating evidence that the sterilization was forced – even if his testimony was credible. Or, the BIA may have concluded that the certificate's authenticity was suspect and therefore failed to bolster Zhang's credibility. The point is that we should not have

14

to guess at the BIA's reasoning. In light of the BIA's failure to explain its treatment of the corroborating documents, we cannot determine whether it applied the correct legal standards. In addition, we cannot simply rely on the IJ's assessment of the documents because the BIA does not explicitly (or even implicitly) adopt the IJ's assessment of Zhang's documentary evidence.

The majority's view is that the BIA made an explicit adverse credibility finding, and therefore the BIA and IJ were not required to explain under *Diallo* why it was reasonable to expect further corroboration and why Zhang's explanations for the lack of such corroboration were insufficient. As I explained above, I do not think that the BIA made an explicit adverse credibility finding. However, it should have under *Diallo*. *Diallo* instructs that the BIA should first "decide explicitly whether or not [an applicant's] testimony was credible," *Diallo*, 232 F.3d at 290, and that assessment must include a consideration of corroborating evidence, *id.*

In any event, as I discussed above, even assuming the BIA did make an adverse credibility finding, remand is required because the finding was not adequately explained.


## V. Conclusion

In sum, the BIA's opinion leaves us guessing at its reasoning. We should not have to guess at the basis for the denial of an asylum claim. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1946) ("If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

15

In other words, 'we must know what a decision means before the duty becomes ours to say whether it is right or wrong.'"). The BIA's decision in this case, is, to use its own words, "lacking in detail." Although we accord the BIA deference, the BIA is required to "elucidate the basis for its factual conclusions," *Qiu*, 329 F.3d at 149, and "we will *vacate* BIA conclusions . . . that a perfectly reasonably fact-finder could have settled upon, insofar as the BIA . . . has not supported its findings with record evidence," *id.*; *see also Mihaylov v. Ashcroft*, 379 F.3d 15, 21 (1st Cir. 2004) ("'A reviewing court should judge the action of [the BIA] based only on reasoning provided by the agency, not based on grounds constructed by the reviewing court,' and 'that basis must be set forth with such clarity as to be understandable.'") (citations omitted); *Guchshenkov v. Ashcroft*, 366 F.3d 554, 560 (7th Cir. 2004) ("The two cases under review, like the other cases in which we have reversed the board of late, are not so difficult that it is unreasonable for a reviewing court to expect and require reasoned judgments at the administrative level.").