09-3581-ag
Qureshi v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of May, two thousand eleven.

Present:     JOSEPH M. McLAUGHLIN,
            ROSEMARY S. POOLER,
            BARRINGTON D. PARKER,
                      *Circuit Judges*.

_____

KHALIL REHMAN QURESHI,

                    *Petitioner*,

          -v-                                            09-3581-ag

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

                    *Respondent*.

_____

Appearing for Petitioner:     Mitchell C. Zwaik, Mitchell Zwaik & Associates, P.C., Bohemia, NY.

Appearing for Respondent:     Tony West, Assistant Attorney General, Civil Division, Ernesto H. Molina, Jr., Assistant Director; Jeffery R. Leist, *on the brief*, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC.

Petition for review of an order of the Board of Immigration Appeals ("BIA").

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **GRANTED** and the decision of the BIA is **VACATED** and **REMANDED** for reconsideration consistent with this order.

Petitioner Khalil Rehman Qureshi ("Qureshi") seeks review of an Order issued by the Board of Immigration Appeals on July 24, 2009, dismissing his appeal and affirming the Order issued by the Immigration Judge ("IJ") (Hom, *IJ*) on October 24, 2007, denying Qureshi's applications for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture ("CAT"). Qureshi timely filed a petition for review before this Court. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

On appeal, Qureshi raises two main objections. First, he argues that substantial evidence in the record does not support the BIA's affirmance of the IJ's decision that Qureshi did not meet his burden in establishing a claim for asylum, withholding of removal, and protection under CAT, because he has shown that he was subject to persecution in his native Pakistan on account of his membership in the Shia minority community. Second, Qureshi argues that the BIA abused its discretion in denying his request to remand his case based on a change in country conditions. We find Qureshi's first objection meritorious and thus vacate the Board's decision in its entirety, remanding for reconsideration on that ground; accordingly, we need not reach the second issue raised.

Where the Board adopts and affirms the Immigration Judge's decision, the court reviews the IJ's decision as supplemented by the Board. *See Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the IJ's factual findings under the deferential substantial evidence standard, keeping in mind that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157-58 (2d Cir. 2008). We will, however, "vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed." *Salimatou Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008). Questions of law and the application of law to undisputed fact are reviewed de novo. *See Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003), *superseded in part by statute as stated in Xiu Xia Lin v. Mukasey*, 534 F.3d 162 (2d Cir. 2008).

Asylum is a discretionary form of relief that hinges on persecution in the applicant's country of nationality or, for those with no nationality, country of last habitual residence. *See* 8 U.S.C. §§ 1101(a)(42), 1158(b). An applicant seeking asylum in the United States must establish that he or she is a "refugee" under 8 U.S.C. § 1101(a)(42), meaning that he or she is "unable or unwilling" to return to his or her native country because of "persecution or a well-founded fear of persecution on account of" one or more of the following five enumerated grounds--"race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also Melgar de Torres v. Reno*, 191 F.3d 307, 311 (2d Cir. 1999).

An applicant may qualify for refugee status by demonstrating that he or she has suffered past persecution, thereby raising a presumption that he or she has a well-founded fear of future persecution, *see Melgar de Torres*, 191 F.3d at 311, or by establishing that he or she has a well-

founded fear of future persecution, *see Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir. 1999). To establish the existence of a "well-founded fear of future persecution," an applicant must demonstrate that he or she subjectively fears persecution, and that this fear is objectively reasonable. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). One's fear may be objectively reasonable "even if there is only a slight, though discernible, chance of persecution." *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000).

Demonstrating eligibility for withholding of deportation is similar to that of asylum, but carries a higher burden, given that withholding of removal is a mandatory, rather than a discretionary, remedy. To carry the burden for establishing withholding, an applicant must demonstrate that it is "more likely than not" that his or her "life or freedom would be threatened in [the] country because of his race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(1). Withholding of removal under CAT is also a mandatory form of relief that hinges on the risk present in the country to which the government seeks removal. *See* 8 C.F.R. § 1208.16(c). In order to qualify for relief under CAT, the applicant bears the burden of establishing that it is more likely than not that he or she would be tortured upon return to his or her country. *See id.*; *see also Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004).

As an initial matter, the government argues that Qureshi has waived his appeal regarding withholding of removal under CAT, as he discusses only the relevant burden of proof, and does not raise a substantive argument before us. The government is incorrect. While Qureshi's references to relief specifically under CAT are rare, his arguments for withholding of removal under the INA are those he would presumably present for withholding of removal under CAT; tellingly, the government has not argued that his withholding of removal claim under the INA is waived. We are thus not presented with a case where the applicant "devotes only a single conclusory sentence to the argument." *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n. 7 (2d Cir. 2005). Accordingly, we do not find Qureshi's claim waived, as he has provided us with a sufficient basis to consider his claim.

Given that the IJ found Qureshi credible, his appeal focuses on whether the IJ properly dismissed Qureshi's claim for failing to meet his burden of demonstrating past persecution, or a well-founded fear of future persecution. The parties disagree on the basis of the IJ's decision to dismiss Qureshi's claim. The government interprets the IJ to have dismissed Qureshi's claim based only on a determination that Qureshi did not prove the required nexus to a statutorily protected ground. Qureshi, on the other hand, interprets the IJ to have determined that the past harms he experienced did not rise to the level of persecution. The IJ's decision seems to have relied on both findings; in both cases, the IJ's decision was not supported by substantial evidence.

"We review factual findings under the substantial evidence standard, which requires that findings 'be supported by reasonable, substantial, and probative evidence in the record.'" *Jalloh v. Gonzales*, 498 F.3d 148 (2d Cir. 2007) (citation and alteration omitted). Beginning with the government's contention that the IJ found that Qureshi did not prove the required nexus to a statutorily protected ground, the IJ erroneously based a portion of his decision on what appear to

3

be the facts of another case.[1]  The IJ's decision found that Qureshi failed to show that his fear was based on any of the protected grounds for asylum, and then proceeded to specify that Qureshi did not show that he qualified for "membership in a particular social group." *In the Matter of Khalil Rehman Qureshi*, A99-756-633, at *9 (Oct. 24, 2007).  In support of his conclusion, the IJ cited to a case, *A-M-E- & J-G-U-,* 24 I. & N. Dec. 69 (B.I.A. 2007), which held that "affluent Guatemalans" do not constitute a "particular social group" for the purposes of the INA.  *Id.*  Yet Qureshi's claim is based on persecution on account of his religion, a specifically protected ground under 8 U.S.C. § 1101(a)(42)(A), as he is a member of the Shia religious minority in a predominantly Sunni Muslim country, which he discussed at length in his hearing before the IJ.  Accordingly, the IJ's specific reference to the membership in a particular social group ground, which Qureshi does not raise, evinces a misunderstanding of the facts before him.  Moreover, the IJ's citation to a case based on membership in a particular social group makes troubling sense in the previous context of the decision's extraneous references to a civil war, criminal gangs, and fear of the applicant's return to his home country because "he will be perceived as a returning resident from abroad with money and will then be the target of gangs." *In the Matter of Qureshi*, A99-756-633, at *2.  The IJ's reliance on facts that were not before it, and legal standards applicable to those facts, is sufficient in and of itself to vacate the agency's decision and remand to the BIA to reconsider the facts of Qureshi's case, and his case only.  There are, however, additional errors committed by the IJ that we take this opportunity to note for the purposes of remand.

Among the pastiche of facts before him, the IJ addressed two specific events to which Qureshi testified at his hearing--an attack which occurred in 1999 while he was working as a cab driver, and an attack which took place in 2002 when he was praying at his mosque.  The IJ found that these events did not "represent past persecution or rise to a well-founded fear of future persecution." *Id.* at *8.  The IJ characterized the first incident in 1999 as a "robbery by criminal anonymous opportunists."  *Id.*  In reaching this conclusion, the IJ relied on the fact that Qureshi "noted in his testimony that taxi drivers were often the target of robberies as they were perceived to be easy targets." *Id.*  Qureshi, however, nowhere stated that taxi drivers, generally, were the target of robberies.  Rather, upon questioning by the IJ if attacks on cab drivers were common, Qureshi responded: "*If it's a Shiite driver*, you bet that he will be attacked for sure."  Qureshi continued, stating that Shia cab drivers were susceptible to attack specifically "by these Sunni clerics definitely, those extremists definitely.  They know when you're driving -- you know, by appearance they know definitely you."  Thus, Qureshi testified to the fact that Shia drivers, not drivers generally, are susceptible to attack, supporting his claim that he was attacked on account of his Shia religion.

---

[1] The IJ's opinion is peppered with references to facts that are clearly not based on Qureshi's testimony or application materials.  At one point, the IJ's decision notes that Qureshi left Pakistan in 1993--when he in fact left in 2002--for fear of the criminal gangs and the civil war in the area--when Qureshi's claim is based on persecution on account of his Shia religion. *See In the Matter of Khalil Rehman Qureshi*, A99-756-633, at *2 (Oct. 24, 2007).  At yet another point the IJ's decision states that Qureshi's "parents and a sister continue to reside in Pakistan," *id.* at * 7, while later correctly stating that only "his seven brothers and five sisters" remain in Pakistan, *id.* at *9.

4

Moreover, Qureshi testified that he recognized the attackers as Sunni soldiers, and members of Sipah-I-Sahaba Pakistan ("SSP"), a Sunni sectarian terrorist group present in the North West Frontier Province region where he resided. He stated that he recognized them because they were wearing the typical garb of Sunni clerics. Therefore, they were not the "anonymous opportunists" that the IJ described. According to Qureshi's testimony, which the IJ found credible, the robbery was incidental to the aggression--Qureshi stated that the men punched him, dragged him out of his cab, took his money, and called him a "bad Shiite," telling him he was not a Muslim, and did not belong in their town. On the basis of this testimony, the characterization of the event as a robbery by criminal opportunists is not supported by substantial evidence.

The second event to which Qureshi testified was the attack in 2002 on the mosque in which he was praying with other members of the Shia community. The IJ described the event, which he misdated at one point as having taken place in 2001, as "about 7 or 8 youths" engaging "in malicious destruction of holy symbols . . . at a religious gathering [Qureshi] was attending during the religious holiday of his faith." *In the Matter of Qureshi*, A99-756-633, at *8. The record, however, points to the fact that the attackers were not "youth" or "kids," as the IJ indicated, but rather Sunni clerics. In an affidavit attached to his initial asylum application, Qureshi recognized and named one of the attackers as a radical Sunni cleric, and stated that he was accompanied by some of his students. Moreover, the reference to "kids" in Qureshi's testimony seems to have been to the kids in his congregation, since he explained that he was praying with kids as well as elderly people. In describing the attackers, Qureshi indicated that he was "100 percent sure" that the attackers were Sunni clerics and stated that they were wearing turbans and shawls, and had goatees. Qureshi also testified to having been punched in the nose, for which he was taken to a hospital, and has documentary support of his admittance and treatment. The fact that the attackers, whom Qureshi was able to identify as Sunni clerics, targeted a place of Shia worship, does not support a finding that the second event was merely youths engaging in "malicious destruction." *Id.* The IJ's findings related to the second event are also not supported by substantial evidence.

Insofar as the IJ found that the events were not related to a protected ground for asylum, we find his decision not supported by substantial evidence. The two acts were clearly tied to Qureshi's religion. The first attack was carried out by Sunni clerics who indicated their disapproval of Qureshi being a Shia, and Qureshi testified that Shia taxi drivers specifically are at risk for these types of attacks; the second attack was carried out in a mosque, again by Sunni clerics, in the religious place of worship of the Shia community. We would be hard-pressed to find facts that more obviously exhibit a connection between a harm and a protected ground.

The IJ further found that "respondent experienced acts of religious discrimination, which *per se*, is not persecution." *Id.* This finding lends support to Qureshi's argument that the IJ relied on a finding that the past events did not amount to persecution, rather than merely relying on a lack of nexus to a protected ground. It also renders the IJ's decision slightly inconsistent, as the IJ simultaneously found that Qureshi suffered from religious discrimination, albeit not persecution, while also concluding that the two events to which he testified were not on account of a protected ground, which would include religion. *Cf. Beskovic v. Gonzales*, 467 F.3d 223, 227 (2d Cir. 2006) (finding that "[b]ecause we cannot determine whether the IJ correctly assessed Beskovic's claim of past persecution, we are stymied" and so "we remand since we

5

cannot predict with confidence that, applying the correct legal standard, the agency would again deny relief").

We note, moreover, that insofar as the IJ found that the evidence did not amount to persecution, such a finding stands on shaky ground, as we have held that "persecution is the infliction of suffering or harm upon those who differ on the basis of a protected ground." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir. 2006). Further, while the persecutors in this case are not the government, "[i]t is well-established that private acts may be persecution if the government has proved unwilling to control [them]." *Aliyev v. Mukasey*, 549 F.3d 111, 116 (2d Cir. 2008) (internal quotation marks omitted). In light of the numerous and significant factual errors in the IJ's decision, we cannot say that his apparent finding that the harms Qureshi experienced did not rise to the level of persecution is supported by substantial record evidence.

We thus conclude that the IJ's findings of fact are not supported by substantial evidence. Accordingly, the judgment of the BIA hereby is VACATED, the petition for review is GRANTED, and the case is REMANDED to the BIA for reconsideration consistent with this opinion. If on remand the BIA determines that further consideration by an IJ is necessary, we request reassignment to a different IJ.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6