**WU BIAO CHEN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Docket No. 98–4108.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 11, 2003.

Decided: Sept. 19, 2003.

Maria S. Lau, Law Offices of Malvern C. Burnett, New Orleans, LA, for Petitioner.

Benjamin H. Torrance, Assistant United States Attorney (Kathy S. Marks and Sara L. Shudofsky, Assistant United States Attorneys, of counsel, and James B. Comcy, United States Attorney for the Southern District of New York, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Respondent.

Before: CABRANES and B.D. PARKER, Jr., Circuit Judges, and RAKOFF,* District Judge.

PER CURIAM.

Wu Biao Chen, a citizen of the People's Republic of China, petitions this Court for review of a February 20, 1998 decision of the Board of Immigration Appeals ("BIA"). The BIA dismissed Chen's appeal from the order of an immigration judge ("IJ"), who found Chen not credible, denied his applications for asylum and for withholding of removal, and ordered him removed from the United States. Because the removal proceedings began prior to April 1, 1997 and the BIA's decision was issued after October 30, 1996, this Court has jurisdiction to consider Chen's petition for review under the transitional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 309(c)(4), Pub.L. No. 104–208, 110 Stat. 3009–626. *See Diallo v. INS,* 232 F.3d 279, 282 n. 1 (2d Cir.2000).

## BACKGROUND

Chen arrived at Orlando International Airport in Florida on July 15, 1994 without a passport or visa. He was immediately apprehended and interviewed by immigration officials with the use of a Mandarin interpreter. During the interview, Chen stated that his employer had helped him to escape from China two years ago and that he had "been in a lot of countries" before coming to the United States. He stated: "I was involved in the student uprising against the Chinese communist government and that[']s the main reason I wanted to escape China."

On August 5, 1994, Chen filed an application for asylum and withholding of removal with the Immigration and Naturalization Service ("INS") on the basis of his "opposition to the inhuman birth control policy imposed by the Chinese government." In this application, Chen indicated that he had never "belonged to or been associated with any organizations or groups" in China, that he had not been mistreated or threatened as a result of his

---

* The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

political opinion, and that he had never been arrested or detained.

On January 25, 1995, Chen filed a second application for asylum and withholding. This time, Chen stated that he had belonged to an organization in China entitled "Underground group," that he had been mistreated as a result of his political opinion, and that he had been arrested while in China. In particular, Chen stated that, in 1993, he had been detained for distributing pro-democracy literature and that, in early 1994, he joined an "underground pro-democracy group." He stated that the group met several times in his home and that, one night in May 1994 when Chen was not home, the police came and raided his house, causing him to hide at "a friend's home" and, ultimately, to flee China. He also indicated that he had a friend who was involved in the June Fourth Uprising in 1989, but he did not state that he had personally participated in that event.

During his deportation hearing in 1996, Chen testified to substantially the same facts as in his January 25, 1995 application for asylum. There were, however, several discrepancies between his asylum application and his hearing testimony. For example, Chen testified that, in May 1994, he hid at his wife's uncle's house, rather than at a friend's house. He also denied stating in his first asylum application that he was never a member of any group or organization in China and that he left China as a result of his opposition to the birth control policy.

On March 24, 1997, the IJ rendered an oral decision denying Chen's asylum application on the ground that Chen's testimony was not credible. The IJ cited several reasons for her adverse credibility finding.

Chen appealed the IJ's ruling to the BIA, which dismissed his appeal in a decision filed February 20, 1998. Although the BIA agreed with Chen that several of the justifications cited by the IJ for her adverse credibility determination were improper, it nevertheless determined that the IJ "acted properly in denying the applicant's requests for asylum and withholding of deportation due to lack of credibility."

First, the BIA noted that "[a]t his hearing, [Chen] claimed to have been persecuted due to the activities he performed on behalf of a pro-democracy organization, but, at the airport, he said that he was involved in the student uprising against the communist government" and failed to mention his membership in any organization. The BIA explained further that "when [Chen] was questioned at the airport, he said that he had left China two years [earlier] and that his employer had helped him to escape" but "at his hearing, he said that he left China in 1994, the year he arrived in the United States" and "that he was self-employed." The BIA then recognized that Chen "did not attempt to explain his discrepant remarks."

The BIA also cited several inconsistencies between Chen's application and his testimony. For example, it noted that, in his application, Chen stated that the group he belonged to was entitled "Underground group," but that, at his hearing, he stated that it was entitled the "People's Organization." It also noted that Chen "testified that he stayed with his wife's uncle when he went into hiding, but, in his asylum application, he stated that he stayed with a friend."

Finally, the BIA recognized that the IJ based her adverse credibility determination in part on the fact that Chen's "manner was hesitant and unconvincing during his hearing," and it expressed its hesitation to overturn her credibility determination on appeal in light of this finding.

For all of these reasons, the BIA declined to overturn the IJ's adverse credibility finding and dismissed Chen's appeal. Chen timely filed this petition for review in our Court. In his petition, Chen contends that (1) no substantial evidence exists to support the BIA's adverse credibility finding, and (2) Chen's testimony, if credited, establishes his eligibility for asylum and withholding of removal.

## DISCUSSION

■ An applicant for asylum bears the burden of establishing that he was persecuted or has a well-founded fear of persecution on account of, *inter alia*, his political opinion. 8 U.S.C. §§ 1158(b), 1101(a)(42)(A); *see also Diallo*, 232 F.3d at 284. An applicant for withholding of removal bears the even greater burden of establishing that "his life or freedom would be threatened in [the] country because of [his] ... political opinion." 8 U.S.C. § 1231(b)(3)(A). Because an applicant who cannot establish his eligibility for asylum is necessarily unable to establish his eligibility for withholding of removal, *see Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999), we will first address Chen's asylum claim.

■ When reviewing the denial of an application for asylum, federal courts defer to the immigration court's factual findings as long as they are supported by "substantial evidence." *Diallo*, 232 F.3d at 287. Under this standard, we will not disturb a factual finding if it is supported by "reasonable, substantial, and probative" evidence in the record when considered as a whole. *Id.* Where, as here, an appeal turns on the sufficiency of the factual findings underlying the immigration court's determination that an alien has failed to satisfy his burden of proof, we will reverse the immigration court's ruling only if "no reasonable fact-finder could have failed to

find ... past persecution or fear of future persecution." *Id.* The scope of our review of the immigration court's factual findings is therefore "exceedingly narrow." *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999). Further, we give "particular deference to the credibility determinations of the IJ." *Montero v. INS*, 124 F.3d 381, 386 (2d Cir.1997).

■ Chen argues that the BIA's adverse credibility determination was not reasonable because each of the inconsistencies it relied upon could be explained. For example, Chen states that "the pro-democracy movement [ ] which Chen was involved in began as the student uprising in 1989" and that it is therefore "understandable why Chen may have initially asserted that he was involved in the student uprising." Pet'r.'s Br. at 12. With respect to Chen's inconsistent statements regarding when he left China, Chen argues on appeal that the immigration officer at the airport was confused about the relevant years because the date provided on one page of the statement was July 15, 1995 rather than July 15, 1994. Accordingly, argues Chen, "it is plausible that [the officer made] a mistake in the statement that states that Chen left China 'two years ago.'" *Id.* at 13.

■ These *ex post* justifications for the discrepancies relied on by the BIA are simply not plausible. Moreover, even if they were plausible, these explanations cannot constitute a sufficient basis for overruling the BIA's credibility determination. The substantial evidence standard requires Chen to do more than simply offer a "plausible" alternative theory; instead, to warrant reversal of the BIA's decision, he must demonstrate that a reasonable fact-finder would be compelled to credit his testimony. *See, e.g., INS v.*

*Elias–Zacarias,* 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

We hold that a reasonable fact-finder could have declined to credit Chen's testimony based on the discrepancies cited by the BIA. Thus, Chen has not met the strict standard of review necessary to overcome an adverse credibility finding. Because Chen's application for asylum was dependent almost entirely upon his own testimony, we affirm the denial of Chen's asylum application. And because Chen cannot establish a claim for asylum, he also cannot meet the more stringent test for withholding of removal.

## CONCLUSION

For the reasons stated above, the BIA properly dismissed Chen's appeal from the IJ's order of removal, and the petition for review is hereby denied.