**Gezim ROJBA, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**No. 03–1014.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 4, 2004.

Decided Aug. 12, 2004.

M. A. Hannigan, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Ari Nazarov, Department of Justice, Washington, DC, for Respondent.

Before FLAUM, Chief Judge, BAUER, and SYKES, Circuit Judges.

### ORDER

Gezim Rojba, a 20–year–old native of Albania, applied for asylum claiming past political persecution. An immigration judge denied his application, concluding that Rojba's account was "too vague and unclear" to establish past persecution or a well-founded fear of future persecution. The Board of Immigration Appeals summarily affirmed, and Rojba petitions for review of the agency's decision. Because the IJ's order is supported by substantial evidence, we deny the petition for review.

From the 1940s until the 1990s, Albania was a Communist country with a harsh regime that repressed its citizens' political and civil rights. *See* U.S. Department of State, Background Note: Albania (available at *http://www.state.gov/r/pa/ei/bgn/ 3235.htm)*. After the fall of Communism in 1991, the Albanian government sought closer ties with the West and introduced some basic democratic reforms, including the multi-party system. *Id.* at 2. In 1992, Sali Berisha, the leader of the Albanian Democratic Party, became the country's first democratically elected president. *Id.* at 3. Berisha's presidency was characterized by a period of political and economic upheaval in Albania, and in 1997, the government essentially collapsed. *Id.* Later that year, a national election was held, and the Socialist Party prevailed, remaining in power for the next five years. *Id.* In 2002, a new president was sworn in, one nominally associated with the Democratic Party, although numerous members of the Socialist Party also occupy high-level government positions. *Id.*

In support of his request for asylum, Rojba claimed that he and several of his family members had been detained, beaten, and harassed by the Albanian secret police, called the "Shik," as a result of their pro-democratic political activities in the 1990s. Many of Rojba's immediate family members are currently in the United States: two of his uncles and his sister-in-law were granted political asylum; his brother is a permanent resident through the diversification lottery program; his sister is a naturalized citizen; and his parents have applied for permanent residency. Rojba claimed that he would be beaten, tortured, or perhaps even killed by the Shik if he were to return to Albania. The following account is taken from his testimony before the IJ:

Rojba's family has a history of pro-democratic, anti-Socialist political activism. His uncle, Sefat, was active in demonstrations protesting the national elections of 1997, in which the Socialists prevailed, because many people believed the elections had been rigged. He was arrested several times by the Shik, and on one occasion was detained for 19 days and severely beaten. He fled to the United States and obtained political asylum. After Sefat obtained asylum, Shik agents paid "a lot of attention" to the Rojba family. In 1998, the Shik detained and severely beat another uncle, Fatmir, who was also active in pro-democratic politics. Fatmir also fled to the United States and obtained asylum.

Rojba, his father, and his sister-in-law were also active in pro-democratic politics. When Rojba was a young teenager, he began assisting in his family's political activities by distributing fliers and hanging posters. On January 31, 1998, Rojba, his father, and his sister-in-law were arrested after they participated in a public demonstration supporting hunger strikers who opposed the Shik. The police separated the three and interrogated Rojba, who was then 14 years old. They told him not to participate in any more demonstrations, slapped him in the face several times and struck him on the back with rubber batons, releasing him after about six hours. Rojba's father and sister-in-law, Elona, who was then 17 years old, were held for several days and were beaten. A few months after they were released, Rojba's father took Elona to the United States. Rojba's father entered with a tourist visa, but Elona entered illegally. Upon her arrival, Elona sought—and eventually obtained—political asylum. Shortly thereafter, Rojba's father returned to Albania to be with his wife and son, as he had only intended to travel to the United States to ensure Elona's safe arrival.

Upon Rojba's father's return to Albania, the Shik continued to harass the Rojba family. In June 1998, Shik agents again arrested Rojba. They questioned him about why his father had traveled to the United States, ordered him to "help" the current government by informing on his family, and pointed a gun at his head. They released him after about nine hours. Rojba's father was also arrested and beaten by the Shik several times between 1998 and 1999, and on one occasion, agents threatened to kill Rojba if his father persisted in his political activities. In June 1999, the Shik again arrested Rojba, interrogating him for several hours about his family's political activities, and in his words, "[t]hey beat me up so bad this time

I thought I was going to die." They warned him that if he did not begin cooperating, they would kill him. In November 1999, Rojba was on his way home when someone driving a blue van "took a shot straight toward my house." Believing Rojba was in danger, his father sent him to Greece, where he was able to obtain a tourist visa to the United States. Rojba arrived in the United States in December 1999, and approximately six months later he applied for political asylum.

At the IJ hearing, Rojba testified about his family's political activities and his mistreatment at the hands of the Shik. Critical to this appeal, Rojba testified on both direct and cross-examination that his family members belonged to the Republican Party, a pro-democracy group that opposes the Socialist Party. He also testified that his family members did not support former Albanian president Sali Berisha, the leader of the Democratic Party. Rojba's sister-in-law, Elona, also testified at the hearing. Although she corroborated Rojba's account of their arrest following the hunger strike in January 1998, she offered conflicting testimony about the family's political beliefs. Contrary to Rojba's statements, Elona testified that the Rojba family belonged to the Democratic Party, not the Republican Party. She also testified, contrary to Rojba's statements, that the family supported former Albanian president Sali Berisha. The government, on cross-examination, questioned Elona about Rojba's testimony that the family had been active in the Republican Party, and asked if she could explain the discrepancy. Her only explanation was that the two parties had similar platforms, and that Rojba might have sympathized with the Republican Party, although she did not believe he was actually a member.

The IJ denied Rojba's asylum application, noting the conflict between Rojba's

testimony and that of his sister-in-law, and also observing that Rojba appeared unable to articulate his family's political beliefs or identify the political party with which they affiliated. The IJ concluded that the evidence Rojba offered was too "weak and meager" to establish a claim for asylum, and that his account was "neither credible [n]or sufficiently detailed to provide a conclusion that the respondent was persecuted in the past." The BIA summarily affirmed in a one-judge order, and Rojba timely petitioned for review with this court.

Because the BIA adopted the decision of the IJ, this court reviews the IJ's order. *See Oforji v. Ashcroft*, 354 F.3d 609, 612 (7th Cir.2003); *Toptchev v. INS*, 295 F.3d 714, 720–21 (7th Cir.2002). We will uphold the IJ's decision if it is supported by reasonable, substantial, and probative evidence in the administrative record as a whole. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir.2004).

The Attorney General has discretion to grant asylum to an alien who is a "refugee." A refugee is one who is unwilling or unable to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Krouchevski v. Ashcroft*, 344 F.3d 670, 671 (7th Cir.2003). Persecution means more than mere harassment and may arise from such actions as detention, arrest, interrogation, beatings, torture, or threats of death. *Oforji*, 354 F.3d at 613. Rojba bears the burden of proving that he is eligible for asylum. *See* 8 C.F.R. § 208.13; *Oforji*, 354 F.3d at 612–13.

The IJ's credibility determinations are entitled to a highly deferential review as long as they are supported by specific, cogent reasons that bear a legitimate nexus to the finding. *Capric v. Ashcroft*, 355 F.3d 1075, 1086–87 (7th Cir.2004); *Pop v. INS*, 270 F.3d 527, 531 (7th Cir.2001). We are not at liberty to overturn the agency's determination simply because we would have decided the case differently. *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003). However, we "will not automatically yield to the IJ's conclusions when they are drawn from insufficient or incomplete evidence." *Id.* at 968. Further, minor discrepancies, particularly those involving immaterial facts, are an inadequate basis for an adverse credibility determination. *See Uwase v. Ashcroft*, 349 F.3d 1039, 1042 (7th Cir.2003); *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002).

On appeal, Rojba argues that the IJ erred in discrediting his testimony. He asserts that the IJ's conclusion that his account was "vague" or "unclear" is unsupported by the evidence. As Rojba asserts in his brief, a few of the IJ's reasons for disbelieving him appear too speculative to support an adverse credibility finding. *See Uwase*, 349 F.3d at 1041; *Georgis*, 328 F.3d at 970. For example, the IJ made much of the fact that Rojba's father had voluntarily returned to Albania in 1998 after traveling to the United States with Rojba's sister-in-law. He questioned why Rojba's father would not remain in the United States if he had indeed been persecuted by the Shik. The IJ, however, overlooked Rojba's testimony that his father traveled to the United States only to ensure his sister-in-law's safe arrival; after she applied for political asylum, Rojba's father immediately returned to Albania to be with Rojba and his mother.

The IJ also relied on a State Department report to undercut Rojba's claims, observing that the report indicated that the Shik had become "smaller and less

active" in recent years. The IJ found this report in conflict with Rojba's claims that his family had been persecuted by the Shik. This court has cautioned, however, that such generalized reports should not be used to contradict a witness's specific testimony. *See Bace v. Ashcroft,* 352 F.3d 1133, 1139 (7th Cir.2003); *see also Galina v. INS,* 213 F.3d 955, 958–59 (7th Cir.2000) (agency erred in giving conclusive weight to State Department report). Moreover, the State Department report relied on by the IJ does not conflict with Rojba's claim that he and his family members were harassed and beaten by the Shik; the report stated merely that the Shik had become "smaller and less active" in recent years, not that it had ceased its activities.

The more difficult question is whether the conflicting testimony about the family's political affiliation provides a sufficient basis for the IJ's decision. *See Uwase,* 349 F.3d at 1042; *Gao,* 299 F.3d at 272. Rojba testified that his family belonged to the Republican Party, and that they did not support former Albanian president and leader of the Democratic Party, Sali Berisha. This testimony was in direct conflict with the testimony of Rojba's own witness, his sister-in-law Elona, who testified that the family was affiliated with the Democratic Party, not the Republican Party, and that they supported Sali Berisha.[1] Rojba appears to argue on appeal that there was no conflict between his testimony and Elona's, and that the IJ therefore erred in discrediting his testimony. Specifically, he asserts that the Republican and Democratic parties in Albania had formed a "coalition" to counter the Socialist Party, and that he and his sister-in-law were therefore both correct about the family's political affiliation. Rojba does not

cite—nor could we discern—any factual support in the record for his "coalition" argument. Even assuming the Republican and Democratic parties formed a coalition, this would not explain why Rojba did not know the name of the specific party to which his family belonged, and of which his father was "chief of the committee" in their town for more than two years. One would think that if Rojba had walked "thousands of miles passing out literature and hanging posters," as he claimed, he would know the name of the political party for whom he was working. Further, despite Rojba's efforts on appeal to muddle the distinction between the two parties, the record indicates that they are in fact different. Rojba's sister-in-law testified that she was aware of the Republican Party, that it had a platform similar to the Democratic Party, and that Rojba may have sympathized with the Republican Party but she did not believe he was actually a member.

Even if Rojba's "coalition" theory might somehow explain the discrepancy in the testimony, to obtain a remand he must do more than offer a plausible explanation for the conflict; he must demonstrate that a reasonable fact-finder would be compelled to credit his testimony. *See Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812; *Krouchevski,* 344 F.3d at 673; *Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003). He has failed to do so. The IJ's finding that Rojba failed to establish past persecution or a well-founded fear of future persecution is supported by substantial evidence. *See Oforji,* 354 F.3d at 614 ("inconsistencies and gaps" in asylum applicant's account provided sufficient basis for agency to reject asylum claim).

---

**1.** As the IJ noted, it is perplexing that Rojba did not call his father as a witness, since he was outside the courtroom during the hearing and could presumably have shed light on the family's political affiliation.

Accordingly, the petition for review is DENIED.