**Phiann MAUNG, Petitioner,**

v.

**Alberto GONZALEZ, Respondent.**

**Docket No. 03–40094–AG.**

United States Court of Appeals,
Second Circuit.

Oct. 5, 2005.

Steven A. Mundie, New York, New York, for Petitioner.

William Slattery, Immigration and Naturalization Service, Office of the District Director, (Paul E. Naman, Assistant United States Attorney, Beaumont, Texas,) New York, New York, for Respondent, of counsel.

Present: CALABRESI, WINTER, and POOLER, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition be GRANTED and the case remanded to the Board of Immigration Appeals ("BIA") for further proceedings.

Phiann Maung, a citizen of Burma, petitions for review of an order of the BIA, affirming an Immigration Judge's ("IJ") denial of Phiann's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts of this case, its procedural posture, and the decision below.

We review the factual findings of the BIA under the substantial evidence standard and, thus, "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS*, 331 F.3d 297, 306–07 (2d Cir.2003) (internal quotations and citations omitted). Credibility determinations are given "the same deference on review as other factual determinations," but the BIA must give "specific, cogent" reasons for rejecting testimony on credibility grounds. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 177–78 (2d Cir.2004). Moreover, this Court's review "is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record or bald speculation or caprice." *Zhang v. INS*, 386 F.3d 66, 74 (2d Cir.2004). However, "[t]o warrant reversal of the BIA's decision, [the petitioner] must demonstrate

that a reasonable fact-finder would be compelled to credit his testimony." *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003).

In this case, although the IJ questioned certain aspects of Maung's account of events, he never explicitly made an adverse credibility finding. Although the IJ concluded that Maung's testimony lacked sufficient specificity and detail to establish his claim for asylum relief, the IJ incorrectly analyzed portions of Maung's testimony and drew incorrect conclusions therefrom. First, regarding Maung's past persecution claim, while the IJ concluded that there was no proof that Maung was ever a student, Maung clearly and specifically testified that, in 1988, he was a student and participated in student-led anti-government protests. Maung also testified that he declined to return to school after the government required students to pledge not to engage in anti-government activities and military officials seized his student identification card.

Second, although the IJ found that Maung had testified that he was the only member of the pro-democracy groups who military intelligence officers had attempted to arrest after the groups distributed pro-democracy flyers, this conclusion is incorrect. Maung clearly testified that, prior to the June 2002 flyer distribution, four members of a pro-democracy group that had planned to assist in distributing flyers were arrested by the military and, after the June 2002 distribution, military intelligence officials came to the homes of all eight members of his group to arrest them. Maung also testified that, after the July 2002 flyer distribution, one of his group's members had been arrested by military intelligence officials.

Third, although the IJ concluded that, based on the limited nature of Maung's political activities, Maung had not established that the Burmese government was aware of his political opinion or had even learned of Maung's identity, the IJ did not consider any of the possible manners in which the authorities could have become aware of this information. For example, the government could have discovered Maung's identity through his association with other dissidents or when the members of the pro-democracy group who had planned to assist with the June 2002 flyer distribution were arrested. Although Maung did not testify as to precisely how the Burmese government learned of his identity and political activities, he testified that the government came to his home to arrest him after the first flyer distribution, monitored the second flyer distribution, came to his home to arrest him after the second flyer distribution, arrested and "disappeared" one of his group members, and had come to his home to arrest him on several occasions since he fled to the United States.

Fourth, regarding his future persecution claim, Maung clearly testified that he would be detained, arrested, interrogated, jailed and possibly tortured by the Burmese government for distributing pro-democracy, anti-government flyers. Despite the IJ's conclusion that this future persecution claim was uncorroborated, the 1999 Amnesty International Report on Burma, a 2001 Human Rights Watch report on human rights abuses in Burma, the 2001 United States Department of State Country Report on Human Rights Practices in Burma, the United States Department of State Consular Information Sheet on Burma, and the 2001 United Nations Resolution all clearly support Maung's assertion that pro-democracy, anti-government political dissidents are routinely detained, arrested, interrogated, jailed and even killed by the Burmese government.

Accordingly, because Maung's claims of past and future persecution were supported by the record, and because the IJ incorrectly analyzed Maung's testimony, we grant the petition for review and remand to the BIA for further proceedings consistent with this order. Additionally, as the IJ's denial of withholding of removal was based entirely on his denial of asylum, the BIA is also directed to reconsider Maung's withholding claim.