**Yu Qing JIANG, Petitioner,**

v.

**Alberto R. GONZALES,[1] Respondent.**

**No. 03–40531 NAC.**

United States Court of Appeals,
Second Circuit.

Nov. 7, 2005.

Karen Jaffe, New York, New York, for Petitioner.

Michael Sady, Assistant United States Attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, Boston, Massachusetts, for Respondent.

Present: MINER, SACK, and SOTOMAYOR, Circuit Judges.

**SUMMARY ORDER**

UPON DUE CONSIDERATION of this petition for review of the Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED. Petitioner's Motion for a Stay of Removal is likewise DENIED.

Yu Qing Jiang, through counsel, petitions for review of the BIA decision affirming the Immigration Judge's ("IJ") decision denying her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history.

This Court reviews the IJ's decision where, as here, the BIA summarily affirmed the IJ's decision without opinion.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

*Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003). This Court reviews the IJ's and BIA's factual findings, including credibility determinations, under the substantial evidence standard, and as such, "a finding will stand if it is supported by 'reasonable, substantial, and probative' evidence in the record when considered as a whole." *Secaida–Rosales,* 331 F.3d at 307 (citation omitted). Our review of an IJ's adverse credibility determination is "highly deferential." *Xu Duan Dong v. Ashcroft,* 406 F.3d 110, 111 (2d Cir.2005) (*per curiam*). When an adverse credibility finding is "based on specific examples in the record of . . . contradictory evidence or inherently improbable testimony . . ., a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang v. INS,* 386 F.3d 66, 74 (2d Cir. 2004) (internal quotation marks and citation omitted). This Court "may not itself hypothesize excuses for the inconsistencies, nor may it justify the contradictions or explain away the improbabilities." *Id.*

Jiang argues that the IJ's adverse credibility determination was not supported by substantial evidence, and was based instead on the IJ's own subjective standards and "own speculation concerning what is proper or reasonable." Speculation and conjecture are invalid bases for an adverse credibility determination. *Secaida–Rosales,* 331 F.3d at 307. To prove that he or she has not relied on such bases, an IJ must provide "specific, cogent" reasons for rejecting the testimony, which bear a legitimate nexus to the finding, and are valid grounds for disregarding the testimony. *Id.* To determine whether the IJ provided sufficient reasoning to withstand Jiang's challenge, we will address each testimonial weakness in turn, bearing in mind our deferential standard of review.

The IJ credited Jiang's testimony about the repeated painful IUD insertions, but doubted the rest of her testimony about her medical condition, particularly in light of her failure to submit corroborating medical records. The IJ was particularly disturbed by Jiang's inability to articulate why she was unsuitable for sterilization, her last-minute admission that she was anemic after repeated questioning on this point, and her continued inability to explain why her anemia prevented sterilization. Because of these unexplained gaps, the IJ was less inclined to believe that either Jiang or her husband was targeted for sterilization.

The nature of the anemia admission was indeed unusual; after consistently testifying that she never got any diagnosis despite all her hospital visits, she suddenly admitted to having a "so called anemia problem" and indicated she knew something about the symptoms. Moreover, she continued to claim both that she was unsuitable for sterilization, and that the government would definitely sterilize her or force her to have an abortion. Although none of these factors, standing alone, is inherently implausible, the IJ reasonably could have found them impossible to reconcile. The IJ provided a reasoned basis for rejecting this testimony, and the record does not compel a different result. *See Secaida–Rosales,* 331 F.3d at 307. This Court may not itself try to reconcile these implausibilities and contradictions. *See Zhou Yun Zhang,* 386 F.3d at 77.

In her airport statement, Jiang clearly stated that she left the PRC because she feared arrest for having joined Falun Gong. She said nothing about IUDs or sterilizations until her credible fear interview, when she first mentioned hiding in another village. She also said that she joined Falun Gong two months before leaving China, when she was in her home

village, Xia Qi.[2] When asked about this discrepancy in court, she said she met with the Falun Gong group in her aunt's village, which she had identified as Nan Zhi Huan Guang village. She also described the relation of several villages to each other, but did not explain where her aunt's village fit in. These discrepancies appear minor and ancillary to her asylum claim, which is based on family planning, not Falun Gong. *See Secaida–Rosales,* 331 F.3d at 308 (minor inconsistencies, particularly those that do not concern the basis of the asylum claim, are not an adequate basis for an adverse credibility finding). However, the IJ could reasonably have been disturbed by Jiang's failure to give any explanation why she told the airport officer that she left because of Falun Gong, without mentioning family planning. *See Wu Biao Chen v. INS,* 344 F.3d 272, 275–76 (2d Cir.2003). Moreover, the record indicates that the IJ was less concerned with this inconsistency, standing alone, than with its tendency to weaken Jiang's claim that she hid with her aunt for five years. Thus, this inconsistency is more properly weighed together with Jiang's testimony about how she obtained notarial birth certificates for herself, her daughter, and her husband.

The IJ could not determine how Jiang was able to procure notarial birth certificates from a government agency in March 1998, during the time when she was supposedly hiding from the government. The IJ also found that this claim contradicted the claim that she stayed with her aunt for five years, returning to her home village only once, secretly. Jiang stated that she made this one visit right before she left the PRC in July 1999. She also admitted to procuring the certificate herself, but did not explain how, beyond a vague statement about how she was in hiding but also waiting for a better opportunity for her daugh-

ter. Putting together this testimony with the Falun Gong statements, the IJ could reasonably have chosen to discredit Jiang's testimony that she was staying with her aunt for the entire five years, and her contention that the government was aggressively seeking her. *See Zhou Yun Zhang,* 386 F.3d at 75 n. 10 (discrepancies, while not conclusive in themselves, may be indicative of an overall lack of veracity).

Jiang testified at length during cross-examination about her own and her husband's household registration. Her husband left China in 1994, and she claimed the government did not cancel his registration until 1998 "because they were thinking that he would probably come back ... for the sterilization." Later she suggested that the government simply gave up on his return in 1998. Because Jiang had submitted her own registration, INS counsel asked her why it had not also been cancelled, given that she had not been living in her village since 1994 either. Jiang said that she suspected hers was also cancelled, because she was not able to get a renewal. She immediately amended this statement, saying it was her father-in-law who tried, unsuccessfully, to renew her registration. The IJ found these explanations implausible.

Moreover, the IJ was skeptical that Jiang would have needed to hide or fear the authorities at all, when she only had one child, applying to have a second child was permitted if the first was female, and her husband was not even in the country. Jiang's only explanation was that certain issues were never straightened out, but these issues were never specified. Jiang may simply not have understood government's procedures regarding household registration, but her inability to explain why, exactly, she needed to hide from the authorities, combined with her testimony that suggested she was not, in fact, hiding

2. In the transcript, the name of Jiang's home village is transcribed as "Zhou Chi."

for the entire time she claimed, undercuts her claim. The IJ made it clear that no single inconsistency was dispositive, but that the adverse credibility finding was based on the inconsistencies and implausibilities in the aggregate. The IJ could reasonably have found that these weaknesses created sufficient gaps and doubts that Jiang could not meet her burden of proof. *Zhou Yun Zhang,* 386 F.3d at 75, n. 10. Because the IJ gave a legitimate, reasoned basis for making the adverse credibility finding, which is supported by substantial evidence in the record, we cannot conclude that a reasonable adjudicator would be compelled to find otherwise. *Id.* at 74; *Secaida–Rosales,* 331 F.3d at 307.

The decision of the BIA is accordingly AFFIRMED and Jiang's motion for a stay is DENIED.