**De Shun LIU, Petitioner,**

**v.**

sional duty to provide quality representation to his clients.

Alberto R. GONZALES,[1] Attorney General, Respondent.

No. 04–2266–AG.

United States Court of Appeals, Second Circuit.

March 7, 2006.

David X. Feng, New York, New York, for Petitioner.

Jonathan S. Gasser, Acting United States Attorney for the District of South Carolina; R. Emery Clark, Assistant United States Attorney, Columbia, South Carolina, for Respondent.

PRESENT: Hon. JOSEPH M. MCLAUGHLIN, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

De Shun Liu petitions for review of the BIA April 7, 2004 order affirming an immigration judge's ("IJ") decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history in this case.

■ This Court reviews the agency's findings of fact under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. United States Att'y Gen.*, 400 F.3d 963, 964 (2d Cir.2005). The IJ's conclusion that weaknesses in Liu's testimony hindered his credibility and engendered a need for cor-

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

roborating evidence was supported by substantial evidence.

The IJ accurately observed that Liu's testimony contradicted his written application regarding the circumstances of the attempt by police to arrest him at his home. At the hearing, Liu testified that the police told his parents that he had done something illegal, but that his parents did not "really know the details." He also stated that there were no leaflets at his home at that time. In contrast, Liu stated in his written application that "[t]he police searched [his] room and confiscated the remaining leaflets." In addition, he stated that when he spoke to his father on the phone after the police had left, his father told him to never come home "because the police had discovered [his] illegal activity by sending anti-government leaflets." Further, the IJ reasonably discounted Liu's explanation for the inconsistency between his testimony and application. Liu's explanation was: "because . . . I find out about . . . the police, you know, however, visiting my home so I told him that." This response lacked clarity and failed to account for the inconsistencies at issue. The attempted arrest was "the central basis for [Liu's] claim of asylum" and not merely "collateral," see Secaida–Rosales v. INS, 331 F.3d 297, 309 (2d Cir. 2003), because it formed the impetus for Liu to flee China.

In addition, the IJ was reasonably "puzzled" by Liu's securing of a notarial birth certificate several months prior to the attempted arrest and his departure, in light of Liu's inconsistent explanation for obtaining the certificate. Liu initially indicated that he personally obtained the birth certificate because he thought it would be "helpful" to him. When asked whether such birth certificates were often used by people planning to travel outside of China, Liu then stated, "Well, I don't know because back then when I was in China, my family, they were the ones who . . . obtained it for me." Similarly, the IJ's concern about Liu's testimony regarding his assistance from the smuggler at the airport was also supported by the record. Liu initially stated that the smuggler bribed the customs officers, allowing him to exit the airport, but then stated that it was his "personal speculation" that the smuggler had bribed them. Liu's description of his interaction with the smuggler was also unclear. Finally, the IJ accurately observed that, for a person who agreed that the Government's stance against Falun Gong was wrong, Liu's testimony contained few details about how he had reached this conclusion, or about anything pertaining to the treatment of Falun Gong practitioners in general or of the other students who had distributed leaflets with him.

■ In addition, the IJ reasonably found that Liu failed to provide available evidence to corroborate his story. Given the deficiencies in Liu's testimony, combined with the assertion that his parents were at home when the police came to arrest him and that they were still in China, the IJ reasonably expected Liu to provide an affidavit from his parents. Further, Liu's testimony, "I don't have it, they didn't write one," did not amount to an explanation for its absence.

The IJ also accurately observed that there was no evidence of threats or pressures against Liu's family since he had departed from China. Although Liu testified that the police had searched for him at home, he did not indicate that his family members had been detained, threatened, or in any other way used to prompt Liu's surrender. As the IJ correctly pointed out, the background materials indicate that

the latter tactics are used by the Chinese government when trying to locate an offender, and their use against Liu's family would have bolstered his claim. Thus, although the absence of such tactics could not have formed the basis to disbelieve Liu, the absence did not strengthen his claim.

Although the IJ's decisions contained several factual findings that were based on gross speculation,[2] the IJ ultimately rested his denial of asylum on the "sustainable" grounds that there was a material inconsistency between Liu's testimony and written application, and that Liu lacked corroborative evidence that would suffice to meet his burden of proof. The "error-infected aspects" were thus merely tangential. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 395 (2d Cir.2005).

Because the only evidence of a threat to Liu's life or freedom depended upon the petitioner's credibility, the adverse credibility determination in this case necessarily precludes success on the claim for withholding of removal. *See Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003).

We may not hear Liu's appeal on the question of CAT relief because Liu failed to exhaust this claim before the BIA. Before a petitioner can seek judicial review of a claim the petitioner must "exhaust all administrative remedies available." 8 U.S.C. § 1252(d)(1). A party may not seek judicial review of an adverse administrative decision until that party has first sought all possible relief within the agency itself. *See Gill v. INS.*, 420 F.3d 82, 86 (2d Cir.2005) (noting that " § 1252(d)(1) bars the consideration of bases for relief that were not raised below, and of general issues that were not raised below"). Liu's brief to the BIA challenges the adverse credibility finding in a general way, but never mentions CAT in its discussion of legal standards or in its four paragraphs applying the law to the facts of this case. Thus, the CAT claim was not exhausted.

For the foregoing reasons, the petition for review is DENIED.

---

**2.** The IJ found that it was implausible that "people engaged in what was potentially dangerous and secret work on behalf of civil rights or human rights in China [ ] would try to pressure a friend into helping them" because "[a] person embarking on this kind of illegal action would most likely have a feeling that it wasn't wise to try to force somebody into taking part in that activity because those are the people who are the most likely to give information to the government [or] to buckle easily if pressured in questioning". This generalization is speculative and impermissible.

The IJ also found that it was implausible that Liu, sought by local authorities, could have left China through a national airport, because the Chinese government probably has "an ability to track a national identification card number through a computer record at an international airport." As support for this proposition, the IJ referenced only "various articles to indicate that the Chinese government has been doing quite an effective job of blocking internet web sites that contain information critical of the government." Nothing in the record suggested that the Chinese government is capable of keeping track of dissidents sought by local authorities and disseminating that information to national airport authorities, and so this finding was speculative and impermissible.