**Guy NTSIETE, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 06–1804–ag.

United States Court of Appeals, Second Circuit.

Oct. 27, 2006.

Matthew J. Harris, New York, New York, for Petitioner.

Charles T. Miller, United States Attorney; Fred B. Westfall, Jr., Assistant United States Attorney, Charleston, West Virginia, for Respondent.

PRESENT: HON. WALKER, HON. JOSÉ A. CABRANES, HON. PETER W. HALL, Circuit Judges.

**SUMMARY ORDER**

Petitioner Guy Ntsiete, purportedly a native and citizen of the Republic of Congo, seeks review of a March 17, 2006 order of the BIA affirming the October 14, 2004 decision of Immigration Judge ("IJ") Paul A. DeFonzo denying petitioner's application for asylum and withholding of removal. *In re Guy Ntsiete,* No. A 95 167 027 (B.I.A. March 17, 2006), *aff'g* No. A 95 167 027 (Immig. Ct. N.Y. City Oct. 14, 2004). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, this Court reviews the decision of the IJ as supplemented by the BIA. *See Yu Yin Yang v. Gonzales,* 431 F.3d 84, 85 (2d Cir.2005); *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 158 (2d Cir.2006) (agreeing with this principle, but avoiding remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

Here, the IJ's adverse credibility determination was supported by alterations in Ntsiete's birth certificate, several discrepancies in the record, as well as Ntsiete's apparent lack of knowledge of the Republic of Congo's geography, all of which are supported by the record. To begin, the IJ reasonably found that it was likely that Ntsiete's birth certificate had been altered and was not a genuine document. The IJ drew this conclusion from the forensic report, which indicates that the year of birth had been typed over an erasure, "the underlying text(s) of which could not be determined," and that other typewritten changes also appeared, the intent of which "could not be determined through forensic examination." The IJ appropriately discredited Ntsiete's explanation for the alterations (that a "manual machine" is used in Congo to type the information, and that "they might make some mistake," but he was "sure" it was the original). *See Majidi v. Gonzales,* 430 F.3d 77, 80–81 (2d Cir.2005) (emphasizing that the agency need not credit an applicant's explanations for inconsistent testimony unless those explanations would compel a reasonable factfinder to do so).

Even if the alterations alone were insufficient to cast doubt on the authenticity of the birth certificate, the IJ reasonably relied on discrepancies in the record to bolster this finding. The IJ accurately noted that Ntsiete provided inconsistent testimony about his identification document, the "Attestation D'identite." Ntsiete initially stated that he had the identification card when he was in Congo, but that he had left it there, and "it was [his] father who obtained that card maybe." After he was informed that the card had a 2002 date of issuance, a date that followed both his father's death and his entry into the United States, Ntsiete changed his testimony. He then testified that he did not obtain the card until he had arrived in the United States and contacted a friend who went to Ntsiete's wife and directed her to send the card to him.

The IJ also accurately observed that Ntsiete provided testimony about the location of his village in Congo that was inconsistent with a map of that region, taken from the World Factbook. Ntsiete testified that his native village, Dolisie, was located in "the north" of his country, and that the "biggest city" close to his village was Pointe–Noire. However, the map indicates that both Dolisie and Pointe–Noire are located in the southern region. In a similar vein, Ntsiete testified that the Nibolek ethnic group was mainly centered in Dolisie, in the north, yet the excerpt from the Political Handbook of the World that he submitted in support of his application indicates that the "largely rural Niari, Bouenza, and Lekoumo ("Nibolek") regions" are in "the south."

The above discrepancies were material to Ntsiete's claim that he was a native and citizen of the Republic of Congo. Furthermore, the IJ appropriately noted that the documentation Ntsiete used to enter the

country indicated that he was a citizen or national of Mali. Thus, the IJ reasonably concluded from the forensic report, the inconsistent testimony, and the apparent lack of knowledge of Congo's geography, that Ntsiete's true identity could not be determined. *See Secaida–Rosales v. INS,* 331 F.3d 297, 308 (2d Cir.2003).

Additionally, the record supports the IJ's findings that Ntsiete testified inconsistently about the dates that the Cobras purportedly arrested and detained him on two separate occasions. While Ntsiete testified that in June 1997 the Cobras detained and beat him, then released him outside of the village, he indicated in his written application that these events occurred in November 1997. Further, although Ntsiete testified that in November 1999 the Cobras again arrested and beat him, and forced him to carry a gun to shoot the Nibolek and the Laris, he indicated in his written application that these events occurred in June 1998. Moreover, Ntsiete's written application omitted mention of being forced to carry a gun and being instructed to shoot people. This omission, when measured against the entire record which supports the IJ's other findings, also undermines Ntsiete's credibility.

Lastly, the IJ reasonably indicated that the absence of any corroboration from Ntsiete's wife, who supposedly was able to send Ntsiete other documents, also undermined his credibility. *See Zhou Yun Zhang,* 386 F.3d at 78 (indicating that the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question).

Given that substantial evidence supports the IJ's adverse credibility determination, the IJ properly denied Ntsiete's asylum application. Because the only evidence of a threat to Ntsiete's life or freedom depended upon his credibility with respect to the events that transpired in the Republic of Congo, the adverse credibility determination in this case necessarily precludes success on the claim for withholding of removal. *See Paul v. Gonzales,* 444 F.3d 148, 156 (2d Cir.2006); *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003).

For the foregoing reasons, the petition for review is DENIED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2) and Second Circuit Local Rule 34(d)(1).