**QI LIN ZHENG, Petitioner,**

v.

**Alberto R. GONZALES, United States Attorney General, Respondent.**

No. 06–2653–ag.

United States Court of Appeals, Second Circuit.

March 7, 2007.

Henry Zhang, New York, NY, for Petitioner.

David L. Huber, United States Attorney; Terry M. Cushing, Assistant United

States Attorney, Louisville, KY, for Respondent.

PRESENT: Hon. THOMAS J. MESKILL, Hon. ROBERT D. SACK, and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Petitioner Qi Lin Zheng, a native and citizen of the People's Republic of China, seeks review of a May 8, 2006 order of the BIA affirming the January 20, 2005 decision of Immigration Judge ("IJ") Alan A. Vomacka denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Qi Lin Zheng,* No. A 78 953 747 (B.I.A. May 8, 2006), *aff'g* No. A 78 953 747 (Immig. Ct. N.Y. City Jan. 20, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

When the BIA affirms the IJ's decision in some respects but not others, this Court reviews the IJ's decision as modified by the BIA decision, minus those arguments for denying relief that were rejected by the BIA. *Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 522 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen v. U.S. Dep't of Justice,* 434

F.3d 144, 158 (2d Cir.2006) (agreeing with this principle, but avoiding remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

■ Overall, the IJ's adverse credibility determination was amply supported by material and substantial inconsistencies in the record. For example, the IJ accurately noted that although Zheng testified that he practiced Falun Gong only once a week, his roommate testified that he saw Zheng practice at least five times a week. The IJ also accurately identified several instances of internal inconsistency in Zheng's testimony, including that: Zheng initially testified that the police had made efforts to arrest him after he fled from the field in November 1999, but then stated that he did not know whether any warrant had since been issued for his arrest or if the police had looked for him at his home; Zheng indicated that he stopped going to work for fear of arrest, but then testified that he did not know whether he ever stopped working in China; Zheng initially testified that he did not know whether he had a work permit in the United States, but then stated that he knew he did not have one; and Zheng initially testified that he was practicing Falun Gong at home when the police came to arrest him in November 1999, but later stated that he had not been practicing Falun Gong. The IJ properly relied on these inconsistencies to support his adverse credibility ruling because, for the most part, they involved the crux of Zheng's claim that he feared persecution in China on account of his practice of Falun Gong. *See Secaida–Rosales v. INS,* 331 F.3d 297, 308 (2d Cir. 2003). Even if some of the inconsistencies were ancillary to Zheng's claim, the IJ reasonably found the cumulative effect of the discrepancies to be consequential. *See*

*Tu Lin v. Gonzales,* 446 F.3d 395, 402 (2d Cir.2006).

The IJ's adverse credibility determination was further supported by the implausibilities in Zheng's claim. The IJ reasonably found it implausible that Zheng would stop going to work for fear of arrest by the authorities, but continue to live at the same family home where the police had previously arrested him. Similarly, it was implausible that Zheng would have practiced Falun Gong in public on a field, while at the same time he feared being arrested at work. In addition, the IJ appropriately found it implausible that Zheng was not able to give a short explanation of the meaning of the Falun Gong exercises, as described in the U.K. Report, given that Zheng had allegedly continually practiced Falun Gong since 1998, six years prior to the hearing.

■ Additionally, there is no evidence that the IJ "deliberately precluded clarification" of the number of times Zheng's witness saw him practice Falun Gong at home. The IJ reasonably found that testimony regarding what time of day the brother-in-law observed Zheng to practice Falun Gong would be irrelevant. Furthermore, the witness clearly asserted in his affidavit that he observed Zheng to practice Falun Gong "everyday." Zheng was therefore not deprived of the opportunity to fully present his case in this respect. There is also no evidence that the IJ exhibited a "rather hostile stance" against Zheng and seemed to advocate the Government's position by objecting to his counsel's questions as leading.

■ The IJ's adverse credibility determination is not free of error. The IJ improperly found that Zheng's subjective belief that the Chinese regime's persecution of Falun Gong practitioners was "lightening up" before the incident on the sports field was "not consistent" with the more objective evidence, in particular the British Home Office report, that such persecution was in fact intensifying. Moreover, it is far from implausible that Zheng, living in a country where information is tightly controlled, might have been unaware of the ebb and flow of the regime's actual persecution of Falun Gong practitioners, as opposed to the regime's public statements against the group. However, although this supposed inconsistency is unsupported, remand is not warranted in this case because, considering the overwhelming evidence undermining Zheng's credibility, we can confidently predict that the IJ would reach the same decision. *See Xiao Ji Chen,* 434 F.3d at 162.

■ Because the only evidence of a threat to Zheng's life or freedom, or likelihood that Zheng would be tortured depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on the claims for withholding of removal and relief under the CAT. *See Paul v. Gonzales,* 444 F.3d 148, 156 (2d Cir.2006); *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003); *see also Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 523 (2d Cir.2005); *cf. Ramsameachire v. Ashcroft,* 357 F.3d 169, 184–85 (2d Cir.2004) (holding that the agency may not deny a CAT claim solely on the basis of an adverse credibility finding made in the asylum context, where the CAT claim did not turn upon credibility).

For the foregoing reasons, the petition for review is DENIED. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appel-

late Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).